# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 26, 2013

## DANNY PENDERGRASS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C58741    Robert H. Montgomery, Jr., Judge**

---

**No. E2012-01696-CCA-R3-PC Filed August 2, 2013**

---

Petitioner, Danny Pendergrass, appeals from the post-conviction court's denial of his petition for post-conviction relief, in which he claimed that his guilty pleas were involuntarily and unknowingly entered and that his trial counsel was ineffective for failing to adequately investigate his case. Petitioner was charged in a 22-count presentment with multiple counts of rape of a child, incest, and aggravated statutory rape against the same victim. Petitioner entered best interests pleas to all counts and received an effective sentence of 25 years in confinement to be served at 100 percent. Following a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Clifton Corker, Johnson City, Tennessee, for the appellant, Danny Pendergrass.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hinson, Assistant Attorney General; and Barry P. Staubus, District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Guilty plea hearing*

At the guilty plea hearing on May 5, 2010, the State summarized the proof as follows:

> . . . . The State's evidence would be the testimony of the victim, that she would testify to those various events that occurred in Sullivan County and

that would include intercourse, that is vaginal, penis vaginal penetration, a penis penetrating her vagina, also oral sex performed by the victim and one event of anal intercourse by [Petitioner] of the victim.

   The State's proof would also be that of [Detective] Melanie Adkins who would testify and we've introduced the statement with the admissions by [Petitioner] which the Court has already heard as part of the suppression hearing. The State's proof would also include that of other individuals that would provide documentation and records to corroborate the circumstances around the victim's testimony which would include an individual [who] owned a mattress, a bedding store, school records, Kingsport City water records, also an individual from East Tennessee Family Physicians to establish the employment of [Petitioner's] wife; also would be the records of registration to show that a vehicle that the victim would testify that they were riding in when a couple of these events occurred belonged to [Petitioner] and registered in his name and when they were registered. That would essentially be the State's proof, Your Honor, . . . .

The State also entered into evidence a timeline that outlined the approximate date, location, and offense associated with each count in the presentment.

During the hearing, Petitioner acknowledged his signature on the "Request for Acceptance of Plea of Guilty" and the "Waiver of Rights" forms, and Petitioner stated that trial counsel "went over it with [him]." Petitioner stated that he could read but that he did not comprehend what he read. Petitioner stated that he understood what was on the forms and that he did not have any questions about the forms. Petitioner stated that he understood the terms of the plea agreement, as well as the elements of the offenses and the ranges of punishment for each offense. Petitioner stated that the only medication he was taking was for his blood pressure. Petitioner stated that he understood he had an absolute right to plead not guilty and proceed to trial and that by pleading guilty, he was giving up his right to appeal his conviction or sentence. Petitioner stated that he understood that he had the right to cross-examine witnesses and to subpoena witnesses and that he had the right to testify or remain silent.

Petitioner stated that he had not been threatened, coerced, intimidated, or pressured into accepting the State's plea offer. Petitioner agreed that he was entering a best interest plea based on his discussions with trial counsel and his review of the State's evidence and possible sentences. Petitioner stated that he was satisfied with counsel's representation of him.

-2-

*Pre-guilty plea hearing*

On May 3, 2010, two days prior to the trial date, Petitioner requested that counsel be relieved as his attorney. Petitioner explained to the court that he felt that counsel had "too much to handle" and that counsel had not "handled [his case] adequately." At this pre-trial hearing, Petitioner stated that he had "probably spent maybe an hour and a half with [counsel] since January." Petitioner stated that he had met with counsel "on several different occasions for the hour and a half." Petitioner stated that he had received and reviewed the State's discovery response. Petitioner stated that he and counsel had not discussed potential defense witnesses "until Thursday or Friday" of the prior week. Petitioner stated that the jail had not allowed him to contact counsel by phone. Petitioner then acknowledged that he was able to call trial counsel after the trial court addressed the issue with the jailers.

Trial counsel explained to the court that he had met with Petitioner and that they had discussed discovery, possible witnesses, Petitioner's statement to police, and the potential sentences. Trial counsel stated that he had also spoken to Petitioner's mother "on several occasions." Counsel explained, "I just really don't know what else I could do." Counsel stated "[Petitioner's] exposure is tremendous and I don't know what else I can do." Counsel explained,

> I've tried to answer all the questions that he's asked and I would do the best job I can but it's an extremely hard case when you got a young girl coming in saying it happened and then you got a statement corroborating it. You know, now he's saying the statement is not correct and then you get into a convicted felon testifying so it's going to be an extremely hard case but I'll do the best I can on it for him and I don't feel like I've neglected the case and I've talked to his mother several times and as I can say even arranged a phone call [ ] on Friday for him to call her. But as I say, you know the witnesses are what bothers me because I'm two days from trial and I still don't – if he'd tell me the names – do you have witnesses?
>
> [Petitioner]:  There ain't [sic] no witnesses.
>
> [Trial counsel]:      I mean that's where I'm at. There is [sic] none so –

The trial court denied Petitioner's request to relieve trial counsel. The court noted that trial counsel had been with the Public Defender's office for "at least 20 years" and that he had "tried numerous trials in [that] court."

*Post-conviction hearing*

At the post-conviction hearing, Petitioner testified that he spent "probably 20 to 30 minutes total outside the courtroom" discussing his case with trial counsel. He testified that the jail did not allow him to contact trial counsel by phone. Petitioner testified that counsel provided him with the State's response to discovery. Petitioner testified that he wanted trial counsel to file a motion for an independent medical exam of the victim, but trial counsel did not file the motion.

Petitioner testified that he was "under so much distress" when he accepted the State's plea offer and entered his guilty pleas. He testified that trial counsel told him, "'[i]f you sign this you're not admitting guilt[.]'" Petitioner testified that he pled guilty because he "was ignorant to how the justice system worked." He testified that he "kind of recall[ed]" answering the trial court's questions at the guilty plea hearing. Petitioner testified he "could have answered [the trial judge's] questions and not even realize[d] what [he] was answering."

Petitioner testified that on August 29, 2009, prior to the presentment in this case, he was visited by his parents, his wife, and the victim. He testified that the victim told him that the District Attorney told her that if she did not testify against him, she would be removed from her mother's custody. Petitioner testified that this information stayed "in the back of [his] mind for a long [time]," and that his plea was involuntary as a result of the threat. Petitioner testified that he "took the plea [offer] out of fear." Petitioner testified that he did not communicate his fear to the trial court at the guilty plea hearing "because [he] was already backed up against the wall . . . [and] didn't have no [sic] choice."

Petitioner testified on cross-examination that he wrote a letter to the victim's mother. In the letter, he told her to "tell [the victim] not to testify against [him]." Petitioner wrote a letter to the victim in which he asked her not to cooperate with the District Attorney. The letter also states, "PS, throw this away after you're done reading it." Petitioner testified, "I just didn't see any need to keeping it."

Petitioner testified that trial counsel advised him that the State's plea offer was for a twenty-five-year sentence. Petitioner testified that trial counsel advised him that he had 12 months after his guilty pleas were entered to withdraw the pleas. Petitioner later "found out [he] actually had only 30 days." Petitioner testified that he attempted to contact trial counsel "on four different occasions" to request that he file a motion to withdraw Petitioner's guilty pleas, but he was unable to contact him. Petitioner testified that he subsequently filed an untimely *pro se* motion to withdraw his guilty pleas. Petitioner testified that he would not have accepted the State's plea offer if he had known that the judgments would be final within

-4-

30 days. Petitioner believed trial counsel "was pushing the plea on [him] instead of going to [trial]."

Petitioner testified that trial counsel filed a motion to suppress a statement Petitioner made to Detective Melanie Adkins. Petitioner testified that trial counsel failed to investigate the credibility Detective Adkins. According to Petitioner, Detective Adkins had been demoted to a patrol officer following a "criminal investigation" at the time of the suppression hearing. On cross-examination, Petitioner acknowledged that he knew at the time he entered his guilty pleas that the State intended to introduce his statement at trial. Petitioner also understood that the State intended to call the victim as a witness at trial. Defendant did not recall whether trial counsel advised him that he might have been impeached by evidence of a prior conviction if Petitioner chose to testify at trial. Petitioner answered, "I believe so" when asked whether trial counsel advised him of the potential sentence if convicted of the charges by a jury.

The victim's mother testified that she had never spoken to trial counsel. She testified that the pastor at her church told her that if she and the victim did not cooperate with the prosecution, she could lose custody of her daughter. She testified that the District Attorney did not make any such statements to her about losing custody. She visited Petitioner while he was incarcerated in Pennsylvania on unrelated charges and told him what her pastor had told her. She testified that Petitioner sent letters to her asking her to tell the victim not to testify against him and that she had given those letters to the District Attorney. Enclosed with a letter to her, Petitioner had prepared a "statement of retraction," which he requested the victim sign.

Trial counsel testified that he had been licensed to practice law since 1984. Counsel began working in the Public Defender's office in 1990, and he retired in 2011. Counsel had experience representing criminal defendants charged with the same crimes with which Petitioner was charged. After counsel was appointed to represent Petitioner, he requested discovery from the State. Included in the State's response to discovery were the medical records of the victim. Based on those records, counsel did not believe it was necessary to seek an independent medical evaluation of the victim. Counsel discussed that issue with Petitioner. Counsel testified that in his discussions with Petitioner, Petitioner appeared to be "well aware of what was going on throughout the process." Counsel and Petitioner also discussed the issue of suppression of Petitioner's statement. In Petitioner's statement, he admitted to having sex with the victim, but Petitioner stated that it was consensual and that the victim had initiated it on some occasions.

Counsel testified that he met with Petitioner "on several occasions." Most of counsel's meetings with Petitioner were in the holding cell at the courthouse. Counsel also

communicated with Petitioner through Petitioner's mother. Counsel did not recall the length of his meetings with Petitioner, but he testified, "it was always adequate to where I felt comfortable with it for whatever was happening that day."

Counsel testified that he did not interview the victim. Counsel testified "[i]t was my understanding she did not want to talk to me . . . ." Counsel testified that the State provided him with a summary of what the victim's anticipated testimony would be. Counsel testified that he sought to have Petitioner's statement, in which he "admitted doing things[,]" suppressed, but the trial court denied his motion. Counsel testified that he knew of no witnesses to testify on Petitioner's behalf at trial, and Petitioner did not advise him of any witnesses. Counsel advised Petitioner of the potential sentences and the issue of consecutive sentencing. Petitioner was offered a 25-year sentence, which Petitioner initially declined. Counsel testified that he was prepared for trial, and Petitioner agreed to accept the plea offer on the morning of the day the trial was scheduled to begin. Counsel testified that he discussed with Petitioner the consequences of a prior criminal conviction if Petitioner chose to testify. Counsel testified that he did not pressure Petitioner to accept the State's plea offer. He testified that he did not advise Petitioner that he had one year to withdraw his guilty pleas. Counsel testified that he explained the advice of rights form to Petitioner prior to entering his pleas. Petitioner never expressed to counsel that he was entering guilty pleas out of fear.

In its written order denying post-conviction relief, the court found that "Petitioner had a very sophisticated level of understanding of the criminal justice process[,]" despite Petitioner's claim that he did not fully comprehend the proceedings. The court accredited the testimony of trial counsel and also found that there was no basis for filing any of the pretrial motions requested by Petitioner, other than the motion to suppress, which trial counsel filed. The post-conviction court found that Petitioner failed to establish by clear and convincing evidence that trial counsel's performance was deficient or that Petitioner did not understand the nature and circumstances of his plea.

*Analysis*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely

de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the standard range of competence. Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As to guilty peas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

We conclude that the record supports the post-conviction court's finding that Petitioner's guilty pleas were knowingly and voluntarily entered. Petitioner asserts that his belief that the State threatened to remove custody of the victim from the victim's mother if the victim did not testify against Petitioner at trial influenced his decision to plead guilty. However, the proof at the post-conviction hearing showed that, despite his belief that the State made such a threat, Petitioner, through multiple letters to the victim and the victim's mother, actually urged the victim not to testify. Petitioner acknowledged that trial counsel advised him of the potential sentences if convicted by a jury of the charged counts. Petitioner also answered affirmatively under oath at the guilty plea hearing that he understood the potential sentences and the nature of the pleas and that he had not been pressured, threatened, coerced or intimidated into accepting the plea offer. The evidence does not preponderate against the trial court's findings. Petitioner is not entitled to relief on this issue.

We also conclude that the record supports the post-conviction court's finding that Petitioner received the effective assistance of counsel. Petitioner has failed to establish that trial counsel's performance was deficient or that Petitioner was prejudiced by the alleged deficient performance and that, but for counsel's errors, he would not have pled guilty and

-7-

would have insisted on going to trial. Petitioner asserts that trial counsel did not communicate with him enough to adequately prepare for trial. The post-conviction court accredited trial counsel's testimony. Trial counsel testified that he met with Petitioner on several occasions, that he provided Petitioner with the State's discovery response, and that he discussed with Petitioner the plea offer, the range of punishments, the weight of the State's case against him, and any potential witnesses. Petitioner acknowledged that trial counsel discussed those matters with him. At the hearing at which Petitioner asked the trial court to relieve trial counsel, Petitioner stated that he had discussed those matter with trial counsel, and Petitioner stated that he knew of no witnesses for trial counsel to call to testify on Petitioner's behalf. Petitioner has failed to establish that trial counsel's communications with Petitioner were insufficient to adequately prepare for trial.

Petitioner also asserts that trial counsel was ineffective for failing to meet with and interview the victim. However, trial counsel testified that the District Attorney's office had informed him that the victim did not wish to speak to him, and trial counsel was provided a statement of the victim's anticipated testimony. Trial counsel was not deficient for failing to interview the victim, and Petitioner made no showing how an interview with the victim would have assisted in his defense.

Petitioner asserts that trial counsel's performance was deficient for failing to obtain an independent medical examination of the victim to determine whether any sexual activity actually occurred with the victim and whether Petitioner's DNA was present. Trial counsel testified at the post-conviction hearing that he had reviewed the victim's medical records and did not find any basis for requesting a medical exam. Counsel also testified that he believed that "DNA would not have been appropriate in this case based upon the allegations of when the crime [occurred] . . . it would tell you nothing." The post-conviction court accredited trial counsel's testimony, finding that "there was nothing to be gained by asking for a DNA analysis" because more than a year had elapsed since the crimes occurred. Petitioner has failed to establish how an independent medical exam or DNA analysis would have changed the outcome of his case.

Petitioner asserts that trial counsel's performance was deficient for failing to attack the credibility of Detective Melanie Adkins at the suppression hearing. The trial court denied the motion to suppress Petitioner's statement to Adkins. The incriminating statement, signed by Petitioner, contains details of Petitioner's sexual relationship with the victim, which began when the victim was 11 years old. The statement reads, "I can't remember when I first did oral sex on [the victim] but she was at least 11. She was about the same age, or at least 11 when she did oral sex on me. [The victim] and I had sexual intercourse maybe once a month, if I was lucky." Petitioner testified at the post-conviction hearing that he did not understand that he was giving a statement to law enforcement, but rather "it was questions that was

-8-

asked [sic] and I answered." Petitioner testified that parts of the statement were incorrect, and he asserts in his brief that the statement "contained false information," but Petitioner does not state what parts of the statement he claims are false. Petitioner acknowledged that he signed the statement. Petitioner testified at the post-conviction hearing that at the time of the suppression hearing, Adkins had been demoted from being a detective as a result of "a criminal investigation" and that he had asked trial counsel "to find out why." Petitioner offered no proof of this assertion, however, and Petitioner has failed to establish that the trial court would have granted his motion to suppress his statement as a result of further investigation by trial counsel.

Finally, Petitioner asserts that counsel was ineffective for advising him that he could withdraw his pleas within 12 months from entering them. Petitioner testified that he would not have entered the pleas if he had known that the judgments would be final after 30 days. Trial counsel testified that he did not advise Petitioner that he had one year to withdraw his pleas. The post-conviction court accredited trial counsel's testimony. The evidence does not preponderate against the findings of the post-conviction court. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a review of the record on appeal, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

-9-